ESTATE OF JOHN JOSEPH TUOHY, JUNIOR, DECEASED, BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16327. Promulgated February 17, 1950.

A. R. Rowell, *Esq.*, for the petitioner.
R. G. Harless, *Esq.*, for the respondent.

OPINION.

HILL, *Judge*: Respondent determined a deficiency in estate tax in the amount of $6,240.68. Certain adjustments made by respondent are not contested. The only issue is whether the respondent erred in including in the gross estate of decedent one-half of the value of the proceeds of two life insurance policies issued on the life of the mother of decedent.

All of the facts were stipulated and they are so found.

John Joseph Tuohy Jr., the decedent, died on July 26, 1944. The petitioner is the duly authorized and acting executor of the estate of decedent. The estate tax return was filed with the collector of internal revenue for the first district of California at San Francisco.

At the date of his death, John Tuohy was a minor. He left no issue. He was survived by a minor brother and three sisters.

On July 10, 1928, the John Hancock Mutual Life Insurance Co., hereinafter referred to as the company, issued to Agnes Tuohy, mother of decedent, a policy of insurance on her life in the amount of $25,000. On September 18, 1928, the same company issued another policy on her life, also in the amount of $25,000. The beneficiaries named in each policy were the five children of Agnes Tuohy.

On June 8, 1939, Agnes Tuohy signed and dispatched a letter to the company at its home office in Boston, Massachusetts, together with properly executed directions to change the beneficiaries of the above mentioned policies. The two policies were enclosed with the letter and the forms for the necessary endorsements. The company was instructed, among other things, to change the beneficiaries on both policies from the five children named to "John J. Tuohy, Jr., and Thomas M. Tuohy, equally or to the survivor." The company endorsed the policies showing the change of beneficiaries on September 30, 1939, effective as of the date of the direction, June 8, 1939. In addition to the instructions above mentioned, Agnes Tuohy, in her letter of June 8, 1939, also stated:

I do not, however, wish the proceeds of these policies, in the event of my death, paid in cash but it is my wish that the Company, at my death, hold the proceeds of these policies under your Option No. 1 and have interest only paid annually to the beneficiaries until each son has reached his thirty-fifth birthday, at which time the amount due shall be forthwith paid in cash.

Should either of my aforementioned sons predecease me, or die while receiving interest payments as requested, in such event, the amount that would have been payable to said son shall be accrued to the benefit of the surviving son under the same provisions unless the said deceased son shall die leaving lawful issue, in which event, said deceased son's share shall be continued to be held by the Company at interest and interest payable semiannually for the benefit of said issue, per stirpes, until the twenty-first birthday of said issue or to a date not beyond thirty years from my death, then full amount due is to be paid in cash to said issue.

Pending the preparation by you and its proper execution by me of the document necessary to effect this arrangement, I should like to have this request serve in the place of such document.

John J. Tuohy, Jr., was born on November 27, 1923 and the birthdate of Thomas M. Tuohy is July 30, 1925.

Agnes Tuohy died on November 16, 1939, at which time the two policies were in force. Because on her death the beneficiaries of the policies were minors, the Bank of America National Trust & Savings Association was appointed guardian of the estate of those minors by the proper court.

On February 8, 1940, the bank filed in the proper court a petition for an order authorizing it as guardian to execute and deliver to the company a direction to change the beneficiaries under the policies and to direct the company to pay the proceeds of the policies in accordance with option 1. Attached to the petition to the court was an exhibit which contained the following:

Bank of America National Trust and Savings Association, guardian of the estates of John J. Tuohy, Jr., and Thomas M. Tuohy, sons of the late Agnes G. Tuohy, and beneficiaries under the above numbered policies issued by the John Hancock Mutual Life Insurance Company of Boston, Massachusetts, on the life of the said Agnes G. Tuohy, deceased, does hereby direct that the proceeds of said policies amounting to Fifty Thousand Three Hundred Thirty-Seven Dollars ($50,337.00) shall be paid by the said John Hancock Mutual Life Insurance Company for the equal benefit of the said John J. Tuohy, Jr., and Thomas M. Tuohy, in accordance with the terms of option #1 of the settlement options of said policies, annual interest payments beginning one year after the death of the said Agnes G. Tuohy on each son's share to be made to such son until he attains the age of 35 years at which time the share in the amount payable of such son so attaining said age shall be paid to such son in one sum.

Said guardian hereby further directs that in the event of the death of either of said sons prior to attaining the age of 35 years such deceased son's share in the amount payable shall be paid in one sum to the surviving children of such deceased son, share and share alike; provided, however, that if any of such deceased son's children have not attained the age of 21 years the shares of such children under said age shall be paid in accordance with said option #1, semiannual interest payments on each such child's share to be made to such child until he or she attains the age of 21 years at which time such child's share shall be paid to such child in one sum; with the express provision, however, that if any of such deceased son's children shall be receiving interest payments at the expiration of a period of thirty years after the death of the said Agnes G. Tuohy then at such time each such child's share shall be paid to such child in one sum.

Said guardian directs that in the event of the death of any of the children of either of said sons after becoming entitled to interest payments and before payment in full of his or her share as hereinbefore provided the share of such deceased child in the amount payable shall be added equally to the shares of the survivors or survivor of such deceased son's children and paid in the manner provided for payment of such survivors' or survivor's share; if, however, at the death of either of said sons there shall be no surviving children of such deceased son or in the event of the death of the last survivor of such deceased

son's children thereafter and before payment in full of such deceased child's share as hereinbefore provided, such deceased son's share of the amount payable shall be added to the share of the insured's other said son and paid in the manner provided for payment of such other said son's share.

Said guardian directs that in the event of the death of the last survivor of said sons and the children of said sons before payment in full the amount payable shall be paid in one sum to the executors or administrators of such last survivor.

On March 4, 1940, pursuant to that petition, the court issued an order authorizing the request made in the petition. Shortly after that the guardian executed and delivered to the company the proper document authorized by the order of the court for the change of the beneficiaries.

Upon receipt of that direction of the guardian and in accordance with it the company endorsed the policies as of March 22, 1940. Such endorsement constituted an agreement by the insurance company to pay the principal of the insurance proceeds under the conditions of the elected option. The insurance company never agreed to pay such principal sum under the conditions outlined in Agnes Tuohy's letter.

The mode of payment of the proceeds of the two policies under the option elected by the guardian differed in certain material respects from the direction of payment set forth by Agnes Tuohy in her letter of June 8, 1939.

Option 1 of the policies reads as follows:

Option 1—Proceeds left on Deposit.—The net sum payable may be left on deposit with the Company, and the Company will pay interest thereon at not less than three and one-half per centum per annum. The principal of the sum left with the Company on deposit will be paid under such conditions as may be agreed upon when the option is elected.

At the date of death of Agnes Tuohy, pursuant to her valid change of beneficiaries under both policies, the beneficiaries, decedent and his brother, were entitled to obtain immediate payment of the proceeds of the policies. The proceeds of the policies vested in the beneficiaries upon the death of the insured.

The respondent determined that the decedent's .50 per cent share in the proceeds of the two life insurance policies above mentioned should be included in the gross estate of decedent in accordance with section 811 (c) of the Internal Revenue Code.

Respondent contends that decedent's mother's election to settle under option 1 of the policies of insurance involved was not effectively made during her life and that consequently when the guardian directed the company to pay the proceeds under option 1 there was a transfer sufficient to bring the value of decedent's interest in those proceeds into his gross estate within the meaning of section 811 (c) of the code.

Petitioner contends, however, that decedent's mother selected option 1 prior to her death by the letter which she wrote to the company on June 8, 1939, and that:

* * * The defeasance of John J. Tuohy's interest in the event of his death derived its force, * * * from what the insured did in her lifetime, and not from what he did after her death, and his act in purporting to create such a defeasible interest was not a taxable transfer.

We can not agree under the facts of this case that decedent's mother, Agnes Tuohy, effectively elected that the proceeds of her policies of insurance should be paid in accordance with the terms of option 1. Petitioner admits on brief that the insurance company did not recognize Agnes Tuohy's letter as an election of option 1. In its requested findings of fact the following is stated:

On the 9th day of February, 1940, the John Hancock Life Insurance Company not having recognized Mrs. Tuohy's letter of June 8, 1939, as a sufficient election of Option 1, said Bank of America National Trust and Savings Association as such guardian, filed in said court in the matter of said guardianship a petition for an order authorizing it as such guardian to execute and deliver to the insurance company a direction to change the beneficiaries under said policies, a copy of which said petition is attached to said Stipulation and marked Exhibit E. * * *

In addition, the letter upon which petitioner relies as proving this election of option 1 by decedent's mother contains a statement which shows that she recognized that the letter was not effective as such election. The statement is as follows:

* * * Pending the preparation by you and its proper execution by me of the document necessary to effect this arrangement, I should like to have this request serve in the place of such document.

There was no evidence adduced to show that such document was ever executed.

It would seem that if Agnes Tuohy's election of option 1, as indicated in her letter of June 8, 1939, had been a sufficient election it would not have been necessary for the guardian to petition the court to direct the company to pay the proceeds under option 1. In this state of the record we can not say that petitioner has sustained its burden of overcoming respondent's determination that the election was made by decedent and not by his mother.

The petitioner argues, among other things, that there was no affirmative act of the company necessary to put the terms of Mrs. Tuohy's letter into effect and that, even assuming such was required, yet petitioner should prevail because "equity will nevertheless regard the change as having been made," citing *Estate of Burnett*, 47 Cal. App. (2d) 464; 118 Pac. (2d) 298, and *Johnston* v. *Kearns*, 107 Cal. App. 557; 290 Pac. 640.

With respect to the affirmative act contention, we can not see how petitioner's position is strengthened, for, exclusive of any further act by the company, it is apparent from the facts that some additional affirmative act was required of decedent's mother. This is indicated in the portion of the letter of June 8, 1939, quoted in our findings. So far as the record shows, nothing further was done by Agnes Tuohy after the writing of that letter to perfect the selection of option 1.

As to the equity argument, it should be noted that the cases cited by petitioner involve situations where the insured had done all he could to effect a change of beneficiary in the policy, but died before the formal documents could be executed. In those cases death came within hours or a few days after the designation of change in the policy and the question was whether "the efforts of the insured prior to his death were effective to change the beneficiary under the policies so as to make the proceeds * * * payable to the beneficiary." *Estate of Burnett, supra.* The California court there held that they were effective. Here, however, Agnes Tuohy apparently did not perform what was required of her, although there was ample time to do so. The letter in which she indicated a desire to select option 1 was written on June 8, 1939, and she died on November 16, 1939. We therefore must conclude that she never perfected an election of option 1.

Thus, having so decided, we must next determine whether the election of option 1 by decedent constituted a transfer of property within the meaning of section 811 (c), as respondent contends. We think, in view of *Estate of Mabel E. Morton,* 12 T. C. 380, that that question must be answered in the affirmative. In that case decedent was a beneficiary of proceeds of policies of insurance on the life of her husband. At the death of her husband she was entitled to a lump sum payment of those proceeds. However, instead of taking them as a lump sum, the decedent elected to have the insurer retain the principal amount, paying her interest and so much of the principal during her life as she determined. The remainder was to be paid to her children and grandchildren. During her life the decedent received monthly interest payments, but she did not withdraw any part of the principal. The respondent determined that the proceeds of the policies of insurance were includible in the gross estate of the decedent under sections 811 (c) and (d), Internal Revenue Code. We agreed with the respondent stating, among other things, the following:

* * * These funds were as much hers as if she had settled with the insurance company by receiving lump sum payments, and by her action she transferred them to those who upon her death were the recipients. *Estate of William J. Higgs,* 12 T. C. 280; cf. *Chase National Bank* v. *United States,* 278 U. S. 327. * * *

We do not believe the facts of this case are distinguishable from those of *Estate of Mabel E. Morton, supra.* Here, as there, the decedent was entitled to a lump sum payment of proceeds of the policies upon the death of his mother. However, instead of taking in that form, he elected to take under an optional method of settlement as above outlined. Under that mode of settlement, he retained the income until the age of 35, at which time the principal was to be paid to him in one sum. Under this optional method of settlement decedent also elected that, in the event of his death prior to attaining the age of 35, his share was to be paid either to his surviving children, or if he left no issue, that amount was to be added to the share of the survivor of the two beneficiaries. In view of the above facts, therefore, we conclude, on the basis of *Estate of Mabel E. Morton, supra*, page 384, that there was a transfer "to those who upon [his] death were the recipients." See *Chase National Bank* v. *United States*, 278 U. S. 327. We therefore conclude that there was a transfer of property of a character which makes it includible in decedent's gross estate under section 811 (c).

Reviewed by the Court.

*Decision will be entered under Rule 50.*

LEECH, *J.*, dissents.